**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

In re: SE PROPERTY HOLDINGS, LLC
v. GREEN                                                                                         18-710-SDD-EWD

## RULING

Before the Court is an Appeal from the United States Bankruptcy Court for the Middle District of Louisiana, Judge Douglas D. Dodd, as supported by the *Brief*[1] tendered by Appellant, SE Property Holdings, LLC (hereinafter "SEPH"). Countering the appeal is the *Brief*[2] of Jeffery Stephen Lawrence Green ("Green" or "Debtor"), to which SEPH filed a *Reply*.[3] For the reasons set forth below, the Rulings and Judgment of the Bankruptcy Court is AFFIRMED.

I.     **FACTUAL AND PROCEDURAL HISTORY**[4]

Jeffery Stephen Lawrence Green was the owner of several natural disaster remediation businesses and had personally guaranteed their debts to Vision Bank, the predecessor-in-interest of SEPH, the Appellant herein. When Green's companies defaulted on those debts in 2014, the United States District Court for the Middle District of Louisiana rendered judgment in favor of SEPH and against Green on the personal guaranties. The United States Court for the Southern District of Alabama later issued a charging order to facilitate SEPH's collection of that judgment. The Alabama court's

---

[1] Rec. Doc. No. 13.
[2] Rec. Doc. No. 15.
[3] Rec. Doc. No. 16.
[4] The Court bases this factual history of the case on the Bankruptcy Court's ruling on the *Motion for Partial Summary Judgment* (See Rec. Doc. No. 6, p. 367, *et seq.*) and its *Memorandum Opinion* at Rec. Doc. No. 1, p. 16 *et seq* (Exhibit E).
50342

charging order directed companies owned by Green to "distribute to SEPH any amounts that become due or distributable to [Green]."[5]

Green and his wife, Memory C. Green, filed a voluntary Chapter 7 Bankruptcy on January 20, 2017. SEPH then filed a complaint against the Greens based on the Middle District of Louisiana's 2014 judgment, which, including interest, by then exceeded $41 million. SEPH's complaint alleged that the Greens had engaged in fraudulent activity and willful and malicious conduct, such that the $41 million judgment against them was nondischargeable pursuant to § 523(a)(2)(A) and § 526(a)(6) of the United States Bankruptcy Code.[6]

After the parties consented to the voluntary dismissal of Memory C. Green from the case, the Bankruptcy Court granted partial summary judgment in favor of Jeffery Green and dismissed with prejudice all but one of SEPH's claims. Trial was held on the one remaining claim, and the Bankruptcy Court issued a *Memorandum Opinion*, declaring that all but $1,626 of Green's debt was dischargeable.

In this Appeal, SEPH contends that the Bankruptcy Court erred with respect to the following actions in Adversary Case No. 117-01017:

(1) The Order denying SEPH's *Motion to Stay or in the Alternative to Extend Scheduling Order Deadlines*;[7]

(2) The *Order Granting Partial Summary Judgment*;[8]

---

[5] Rec. Doc. No. 1, p. 17.
[6] The bankruptcy court had jurisdiction over this matter pursuant to 28 U.S.C. § 157(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.
[7] Rec. Doc. No. 1, p. 9 (Ex. A).
[8] *Id*. at p. 10 (Ex. B).
50342

(3) The *Memorandum Opinion*[9] and Order denying SEPH's *Motion to Alter, Amend, or Vacate Partial Summary Judgment;*[10]

(4) The *Memorandum Opinion* regarding claims not disposed of in the Partial Summary Judgment Order;[11] and

(5) the *Judgment* entered by the Bankruptcy Court on July 6, 2018.[12]

The Court will address each argument in turn.

## II. LAW AND ANALYSIS

### A. SEPH's *Motion to Stay or in the Alternative, Motion to Extend Time of Scheduling Order Deadlines*

Discovery rulings are subject to reversal upon a showing of abuse of discretion.[13] Thus, this Court will affirm the discovery rulings of the Bankruptcy Court "unless they are arbitrary or clearly unreasonable."[14] With that standard in mind, the Court turns to the Bankruptcy Court's denial of SEPH's *Motion to Stay or in the Alternative, Motion to Extend Time of Scheduling Order Deadlines*.

During a scheduling conference held on June 27, 2017, the parties and the Bankruptcy Court agreed to a five-month discovery period, to conclude on November 27, 2017.[15] On November 22, 2017, five days before the end of that discovery period, SEPH filed its *Motion to Stay or in the Alternative to Extend Time of Scheduling Order*

---

[9] *Id.* at p. 12 (Ex. C).
[10] Rec. Doc. No. 1, p. 15 (Ex. D).
[11] *Id.* at p. 16 (Ex. E).
[12] *Id.* at p. 27 (Ex. F).
[13] *Curry v. Strain*, 262 Fed. Appx. 650, 651 (5th Cir. 2008) ("We review discovery rulings . . .for abuse of discretion").
[14] *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 876 (5th Cir. 2000).
[15] Rec. Doc. No. 5-1, p. 5, lines 2-3.

*Deadlines*.[16] The Bankruptcy Court denied the motion after a hearing on December 13, 2017. In its appeal, SEPH argues that the denial was in error in light of "the pendency of concurrent actions in other federal district courts against Debtors and/or their family members."[17]

At the December 13, 2017 hearing, SEPH's counsel testified that an extension of the discovery period would be beneficial because SEPH was still awaiting a response to a subpoena it issued in a related case in the Southern District of Alabama to Green & Sons, L.L.C., of which Jeffery Green is an officer. Specifically, SEPH's counsel testified that Green & Sons allegedly "transferred a quarter of a million dollars to a Panamanian entity"[18] in violation of the charging order in place, and that information about that transaction would be relevant as SEPH prepared to argue its "willful injury case"[19] in the pending Middle District of Louisiana case. Overall, SEPH argued at the hearing that there was a "clear nexus"[20] between the pending discovery in the Alabama case and the need to extend the discovery period in the Louisiana case.

On the other hand, Green argued that the outstanding subpoena to Green & Sons did not necessitate an extension of the discovery period for several reasons. First, Green argued, Green & Sons "is not a judgment debtor of SEPH"[21] and, as such, the alleged Panamanian transaction would have "zero effect"[22] on the judgment in the Middle District of Louisiana case. Second, Green argued that an extension was not warranted in light of

---

[16] Rec. Doc. No. 5-3, p. 3, Doc # 23.
[17] Rec. Doc. No. 5-2, p. 1.
[18] Rec. Doc. No. 5-1, p. 8, lines 3-4.
[19] Rec. Doc. No. 5-1, p. 8, line 16.
[20] *Id.* at p. 10, line 6.
[21] *Id.* at p. 14, lines 9-10.
[22] *Id.* at p. 15, line 8.
50342

the fact that counsel for both parties agreed to the five-month period, and the fact that the Greens had "given [SEPH] everything [they had] that's been responsive to any discovery."[23] Any extension of the discovery period would be damaging to the Greens, who, their counsel testified, "don't have anything to seize and . . . are entitled within a reasonable period of time to get on with their life and we think that time is . . . well set out in the existing scheduling order."[24]

After hearing the testimony of both parties, Judge Dodd denied the motion, finding that "there [was] no basis for staying the proceedings, certainly, or extending any of the times in the scheduling order."[25] Judge Dodd relied in part on the fact that the parties had participated in a telephone conference and consented to the scheduling order; in fact, he noted, "the parties insisted that we could do it by February."[26] As to the outstanding subpoena to Green & Sons, Judge Dodd stated that, based on the testimony at the hearing, SEPH's counsel had already "gotten a lot of information"[27] that could be admitted at trial related to "the diversion of funds subject to his client's security interest."[28]

Based on a review of the transcript of the December 13, 2017 hearing, the ruling of the Bankruptcy Court is affirmed. Judge Dodd's denial was grounded in legally and practically sound considerations and, as such, was not "arbitrary or clearly unreasonable,"[29] nor an abuse of discretion.

---

[23] Rec. Doc. No. 5-1, p. 17, lines 1-2.
[24] *Id.* at lines 13-16.
[25] *Id.* at p. 20, lines 15-16.
[26] *Id.* at p. 20, lines 2-3.
[27] *Id.* at lines 5-6.
[28] *Id.* at lines 8-9.
[29] *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 876 (5th Cir. 2000).
50342

### B. Debtors' *Motion for Summary Judgment*

This Court reviews the Bankruptcy Court's grant of summary judgment *de novo*.[30] Summary judgment will be affirmed "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[31]

In its appeal *Brief*, SEPH argues that the Bankruptcy Court improperly granted partial summary judgment in favor of Green "even though there was sufficient evidence presented by SEPH to create a dispute of material fact as to the Livingston Parish Receivables, the transfer of entity goodwill, the Capstone payments, and other distributions that may have been made to Appellee by Green & Sons."[32] SEPH further contends that the Bankruptcy Court "ignored evidence[33] and "improperly weighed the evidence"[34] in arriving at its decision. The Court will address each of the summary judgment arguments in turn.

#### 1. The Livingston Parish Receivables

SEPH argues that the Bankruptcy Court improperly granted summary judgment on the issue of SEPH's entitlement to certain FEMA funds -- the so-called "Livingston Parish receivables" -- received by Green's company. SEPH claims that it "clearly had a security interest in the Livingston Parish Receivables, and the Appellee knew about such security

---

[30] *Peel & Co., Inc. v. The Rug Market,* 238 F.3d 391, 394 (5th Cir. 2001).
[31] *In re Ark–La–Tex Timber Co., Inc.,* 482 F.3d 319, 328 (5th Cir. 2007) (citing Fed.R.Civ.P. 56(c)).
[32] Rec. Doc. No. 13, p. 35.
[33] *Id.*
[34] *Id.*

50342

interest and failed to transfer those to SEPH."[35] Therefore, the Livingston Parish receivables should be rendered nondischargeable under Section 532(a)(2) or 532(a)(6). Green disagrees, arguing that he demonstrated that SEPH and its predecessor-in-interest "knew about the use of the proceeds [by Green's company] and consented to that use."[36]

The Bankruptcy Court heard oral argument with respect to the Livingston Parish receivables at the January 31, 2018 hearing on the motion for summary judgment. At that hearing, counsel for Green stated that although "there [was] no dispute . . .that the money came in"[37] and "there [was] no dispute that [SEPH] had a security interest in receivables,"[38] SEPH was nevertheless not entitled to the Livingston Parish receivables because SEPH "was formed . . .after the Livingston Parish money came in."[39] Green's counsel noted that his motion for summary judgment was supported by an affidavit from Ms. Ellison, the office manager of Green's company, who attested that she "personally was involved in preparing weekly cash reports and provided them to Vision Bank," who was SEPH's predecessor-in-interest with respect to the Livingston Parish receivables.

In rebuttal, SEPH offered the affidavit of its employee Jennifer Corbitt, who testified that "SEPH did not consent to the [Greens'] use of the Livingston Parish Receivables."[40] SEPH's counsel emphasized that "there is no distinction"[41] between SEPH and Vision Bank as a matter of law; therefore, the affidavit of Jennifer Corbitt, stating that SEPH did not know about or consent to the Greens' use of the Livingston Parish receivables, also

---

[35] Rec. Doc. No. 13, p. 42.
[36] Rec. Doc. No. 15, p. 8.
[37] Rec. Doc. No. 6, p. 320, line 6.
[38] *Id.* at lines 16-18.
[39] Rec. Doc. No. 6, p. 321, lines 13-15.
[40] Rec. Doc. No. 13, p. 41.
[41] Rec. Doc. No. 6, p. 337, line 19.
50342

served to establish the knowledge and consent of SEPH's predecessor-in-interest, Vision Bank.

The Bankruptcy Court granted summary judgment as to the Livingston Parish receivables in favor of Green, finding that "no disputed material fact exists" because "SEPH has not contradicted the affidavit of Ms. Ellison that Vision, SEPH's predecessor in interest . . . consented to [Green's] use of the Livingston Parish payments."[42] The Bankruptcy Court found that the affidavit of Ms. Corbitt "lack[ed] . . .personal knowledge" on the issue of SEPH's consent; Judge Dodd also cited the fact that "the letter denying the entities' permission to use the funds is dated April 20, 2012, nearly two years after [Green] received the vast majority of the Livingston Parish payments on which this part of SEPH's claim rests"[43] as a basis for finding that there was no genuine dispute of material fact.

On appeal, SEPH argues that the Bankruptcy Court was in error where it concluded that Corbitt's affidavit was not based on personal knowledge, citing several cases for the proposition that "personal knowledge can be inferred from the circumstances."[44] Although personal knowledge *can* be inferred, this Court finds that Judge Dodd had valid reasons for concluding that the affidavit in question lacked personal knowledge. As counsel for Green argued at the hearing, Corbitt's affidavit contains "no mention that she had anything to do with the bank,"[45] nor any "suggestion that [she] was even with Vision Bank prior to her time or concurrent with her time with SE Property

---

[42] Rec. Doc. No. 6, p. 372, lines 5-9.
[43] *Id.* at p. 371, lines 21-25.
[44] Rec. Doc. No. 13, p. 42.
[45] Rec. Doc. No. 6, p. 323, lines 1-4.

50342

Holdings."[46] Further, Corbitt attested that "SEPH did not know about the collection efforts on the Livingston receivables during the relevant period of time. . .from 2009 till, mostly, the end of 2010."[47] Noting that the vast majority of the Livingston Parish receivables were received by September 2, 2010, Judge Dodd concluded that the affidavit was "artfully worded" to "avoid drawing attention to the extensive time between [Green's] receipt of the payments from Livingston Parish and SEPH's denial . . . of permission to use the receivables."[48] This Court agrees. In contrast to the "spreadsheet of payments"[49] provided by Green as evidence of the knowledge and consent of Vision Bank, the affidavit of Corbitt did not suffice to create a genuine dispute of material fact. The Bankruptcy Court did not, as SEPH contends, improperly consider credibility. It merely made an assessment as to the competence of Corbitt's affidavit as summary judgment evidence under Federal Rule of Civil Procedure 56(c)(2). Because SEPH failed to demonstrate a genuine dispute of material fact as to the non-dischargeability of the Livingston Parish receivables, the Bankruptcy Court properly granted summary judgment on the issue.

2. <u>The Transfer of Entity Goodwill</u>

Green also moved for summary judgment on the issue of whether he improperly transferred the "goodwill" or other intangible value of his companies to GreenCo Services, a company owned by his brother. On appeal, SEPH claims that it "submitted sufficient evidence to support a determination that the goodwill of the entities had been transferred to intentionally hinder SEPH's ability to collect assets available to it under the security

---

[46] *Id.*
[47] Rec. Doc. No. 6, p. 323, lines 5-8.
[48] Rec. Doc. No. 6, p. 372, lines 1-4.
[49] *Id.* at lines 23-24.

50342

agreements."[50] Green disagrees, arguing that, in fact, SEPH provided "no rebutting evidence tending to show the need for a trial"[51] on the goodwill issue.

At the hearing on the motion for summary judgment, the Bankruptcy Court concluded that "[SEPH] offers no facts to contradict [Green's] statements that no goodwill or similar intangible asset existed or that if it did exist, it was transferred."[52] "In short," Judge Dodd stated, "no disputed material fact exists as to the transfer of goodwill and intangibles."[53] The record demonstrates that Judge Dodd did not err in that conclusion. Green attested that he was unaware of any transfers and that:

> In my experience in this industry, the value of a company name is only as strong as its ability to perform on a bid contract. We had lost our financing, had no bonds, and left subcontractors unpaid with substantial lien claims. If anything, I would place the value of company goodwill at a negative number.[54]

Neither SEPH's opposition to summary judgment nor the cursory argument in its appeal *Brief* offers evidence of these alleged transfers sufficient to prevent the award of summary judgment. Thus, the Bankruptcy Court's granting of summary judgment is affirmed with respect to the issue of goodwill transfers.

### 3. The Capstone Payments

In its *Amended Complaint*, SEPH alleges that Green committed actual fraud when he took $225,000 in proceeds from the sale of real property owned by Green & Sons (of which Green controlled a 50% interest) and improperly transferred them to a Panamanian

---

[50] Rec. Doc. No. 13, p. 49-50.
[51] Rec. Doc. No. 15, p. 10.
[52] Rec. Doc. No. 6, p. 374, lines 9-12.
[53] *Id.* at lines 16-18.
[54] Rec. Doc. No. 6, p. 374, lines 3-8.

50342

entity called Capstone Development, S.A.[55] Per SEPH, that transfer was made in violation of the charging order put in place in the related bankruptcy case in the United States District Court for the Southern District of Alabama. That charging order required Green & Sons to "distribute to SEPH any amounts that become due or distributable to [Green]."[56] Green moved for summary judgment on the issue, arguing that the charging order "could only capture distributions made by the company to its members"[57] and was "not the equivalent of a security interest against Green & Sons' cash."[58] Green further argued that the organizing documents of Green & Sons authorized the entity to make loans related to real estate investments and that the transfer to Capstone was such a loan, not a distribution that would fall within the scope of the charging order. In its opposition to summary judgment, SEPH contended that Green, acting out of "clear ill will toward SEPH," transferred the funds via "suspicious 'loans' to a foreign entity controlled by a close friend rather than pay his obligation to SEPH."[59]

At the hearing on the motion for summary judgment, the Bankruptcy Court focused on the language of the charging order, suggesting that the type of "distributions" falling within its scope was unclear and that the language could have been "a little bit more specific in an abundance of caution."[60] Ultimately, the Bankruptcy Court concluded that "SEPH offer[ed] no facts to show that the LLC was required to disburse funds from the sale to its members, which is crucial because the charging order applies only to

---

[55] Rec. Doc. No. 6, p. 374-5, lines 24-26.
[56] Rec. Doc. No. 1, p. 17.
[57] Rec. Doc. No. 15, p. 9.
[58] Rec. Doc No. 15, p. 9.
[59] Rec. Doc. No. 13, p. 45.
[60] Rec. Doc. No. 6, p. 353, lines 14-15.
50342

disbursements."[61] Citing the language of Green & Sons' Articles of Organization and Operating Agreement, the Bankruptcy Court found that the loan to Capstone was the type of transaction specifically contemplated and authorized by the organizing documents of Green & Sons. Therefore, the loan was not *ultra vires* in the context of Green & Sons' organizing documents, and also "was not a disbursement within the meaning of the plain language . . .of the charging order."[62]

In its appeal *Brief*, SEPH argues that the Bankruptcy Court "incorrectly applied the language of the charging order"[63] because Alabama law construes "distribution" broadly to include transfers of money like the one at issue here. Additionally, SEPH argues it presented enough evidence of "the suspicious nature of the transaction" for the fact finder to conclude that the Capstone transaction was "made with the subjective intent to defraud SEPH under §523(a)(2)(A)" or "with the intent to harm SEPH . . .under §523(a)(6)."[64] Green disagrees, arguing in his opposition to the appeal that the Bankruptcy Court was correct in its conclusion that the Capstone payment fell outside of the scope of the charging order.[65]

This Court finds that the Bankruptcy Court was correct to grant summary judgment on the issue of the Capstone transaction. SEPH repeatedly suggests that "the loan does not pass the 'smell test,'"[66] but the "smell test" is not the relevant inquiry. The question before the Bankruptcy Court was whether there was a genuine issue of material fact

---

[61] Rec. Doc. No. 6, p. 376, lines 10-13.
[62] Rec. Doc. No. 6, p. 376, lines 17-19.
[63] Rec. Doc. No. 13, p. 46.
[64] Rec. Doc. No. 13, p. 48.
[65] Rec. Doc. No. 15, p. 9.
[66] Rec. Doc. No. 13, p. 49.
50342

regarding the Capstone transaction under either § 523(a)(2)(A) or § 523(a)(6). For a debt to be nondischargeable under § 523(a)(2)(A), the Fifth Circuit has held that the "debtor must have acted with objective substantial certainty of subjective motive to inflict injury."[67] As for § 523(a)(2)(A), that provision of the Bankruptcy Code renders nondischargeable a debt that was "obtained by . . . false pretenses, a false representation, or actual fraud."[68] The United States Supreme Court in *Husky* held that the "actual fraud" provision of § 523(a)(2)(A) encompasses "fraudulent conveyance schemes."[69]

Based on a review of the record that was before the Bankruptcy Court, this Court concurs that SEPH simply did not evince evidence tending to show a genuine issue of material fact under that standard. SEPH argued, *inter alia*, that the loan to Capstone was suspect because the loan agreement was "not contemporaneous"[70] with the transfer of the funds, because Capstone is "owned by a childhood friend of Lawrence Green,"[71] and because "the payments . . . were erratic and not consistently followed up on."[72] Again, whether or not that evidence tends to show that the loan was *suspect* is not the relevant inquiry. Under Fifth Circuit precedent, for nondischargeability to arise under § 523(a)(6), the "debtor must have acted with objective substantial certainty of subjective motive to inflict injury."[73] The uncontroverted evidence in the record does not support such a finding, and the Bankruptcy Court was correct to grant summary judgment on the issue.

SEPH essentially argues, as it states in its *Brief*, that "Green & Sons sold real

---

[67] *In re Williams*, 337 F.3d 504, 508-9 (5th Cir. 2003).
[68] 11 U.S.C. § 523(a)(2)(A).
[69] *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016).
[70] Rec. Doc. No. 6, p. 349, line 8.
[71] *Id.* at line 9.
[72] Rec. Doc. No. 6, p. 350, lines 5-6.
[73] *In re Williams*, 337 F.3d 504, 508-9 (5th Cir. 2003).
50342

property for $300,000 and could have distributed the proceeds to its owners," making those proceeds subject to the charging order. However, the fact that Green & Sons *could* have distributed the proceeds to its members does not change the fact that the evidence demonstrates that it did not. The Bankruptcy Court held that the proceeds transferred to Capstone "were never within the ambit of the charging order"; therefore, Green "was not required legally to distribute the debtor's share of proceeds to SEPH."[74] This Court agrees. In light of the Bankruptcy Court's interpretation of the charging order, SEPH's evidence did not give rise to a genuine dispute of material fact sufficient to defeat summary judgment on the issue.

## C. Appeal from the *Memorandum Opinion*[75] and Order denying SEPH's *Motion to Alter, Amend, or Vacate Partial Summary Judgment;*[76]

After the Bankruptcy Court granted partial summary judgment in favor of Green,[77] SEPH filed a Rule 9023 *Motion to Alter, Amend, or Vacate the Partial Summary Judgment.*[78] The Bankruptcy Court denied that *Motion* in a *Memorandum Opinion* on May 21, 2018. Bankruptcy Rule 9023 incorporates Rule 59(e) of the Federal Rules of Civil Procedure. In the Fifth Circuit, the denial of a Rule 59(e) motion to alter or amend a judgment is reviewed for abuse of discretion.[79] Thus, this Court will review the Bankruptcy Court's denial of SEPH's Rule 9023 *Motion* for abuse of discretion.

The standard for prevailing on a motion under Rule 9023 is clear: the mover must

---

[74] Rec. Doc. No. 6, p. 376, lines 8-10.
[75] Rec. Doc. No. 1, p. 12 (Ex. C).
[76] Rec. Doc. No. 1, p. 15 (Ex. D).
[77] Rec. Doc. No. 1, p. 10 (Ex. B).
[78] Rec. Doc. No. 1, p. 12.
[79] *Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.,* 6 F.3d 350, 353 (5th Cir.1993) (citing *Midland West Corp. v. F.D.I.C*, 911 F.2d 1141, 1145 n.4 (5th Cir.1990)).
50342

clearly establish either a manifest error of law or must present newly discovered evidence.[80] In its *Memorandum Opinion*, the Bankruptcy Court noted that SEPH's motion "points to no evidence unavailable to it at the time of the original hearing."[81] SEPH introduced an additional affidavit in support of its Motion, which the Bankruptcy Court saw as an "effort to shore up its case by . . . including information omitted from an earlier affidavit of the same witness."[82] The Bankruptcy Court stated that the inclusion of this affidavit was "inappropriate" and insufficient to create a basis for reconsideration of its previous ruling. Moreover, the submission of the affidavit was "premised on a misconstruction of the court's ruling,"[83] which granted summary judgment because SEPH failed to rebut Green's evidence that Vision Bank had consented to Green's use of the Livingston Parish receivables in the ordinary course of business.

In its Appeal, SEPH contends that the Bankruptcy Court improperly weighed evidence and that its "failure to recognize its legal error constitutes abuse of discretion."[84] On the contrary, this Court finds, after a review of the record, that the Bankruptcy Court did not err in denying the *Motion to Alter, Amend, or Vacate*. In fact, this Court notes that the Bankruptcy Court could have denied the motion without addressing its substance, given that SEPH "failed to set the motion for hearing as required by the District's Local Rules."[85] Instead, the Bankruptcy Court considered SEPH's arguments and came to a reasonable conclusion. At no point did the Bankruptcy Court demonstrate abuse of

---

[80] *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).
[81] Rec. Doc. No. 1, p. 13.
[82] Rec. Doc. No. 1, p. 14, n. 6.
[83] Rec. Doc. No. 1, p. 13.
[84] Rec. Doc. No. 13, p. 53.
[85] Rec. Doc. No. 1, p. 12.

50342

discretion.

### D. Appeal of the *Memorandum Opinion* on the nondischargeability of payments from Green & Sons to an accounting firm

After the Bankruptcy Court granted and then refused to reconsider its granting of summary judgment, there remained only one issue for trial: whether "Green maliciously willfully and maliciously harmed SEPH when he had a family limited liability company, in violation of a federal district court's charging order, transfer $8,700 to pay an accountant for preparing tax returns for Green and several family businesses in which he owned interests."[86] The Bankruptcy Court noted that this claim was "not premised on Green's having defrauded [SEPH] or Vision Bank. . .rather, [it] rests entirely on alleged transfers Green caused to be made in violation of the charging order."[87] SEPH argued at trial that Green's circumvention of the charging order constituted actual fraud under Bankruptcy Code § 523(a)(6), which would render the amount in question nondischargeable.

In its *Memorandum Opinion*, the Bankruptcy Court concluded that the transfer to the accounting firm was not "actual fraud" because SEPH failed to establish that Green undertook the transfer with the requisite *scienter* of "moral turpitude or intentional wrong."[88] The record developed at trial included Green's "deposition testimony colorfully expressing a strong dislike of SEPH,"[89] but ultimately, the Bankruptcy Court found that SEPH offered "no persuasive evidence"[90] that Green concealed funds in his family LLCs in violation of the charging order. Based on its review of the trial record, this Court agrees.

---

[86] Rec. Doc. No. 1, p. 16.
[87] Rec. Doc. No. 1, p. 19.
[88] Rec. Doc. No. 1, p. 20.
[89] Rec. Doc. No. 1, p. 21.
[90] Rec. Doc. No. 1, p. 20.

50342

The record demonstrated that Green's "sole goal in transferring $8,700 from Green & Sons to his accountant was to complete his tax returns to allow him to obtain bankruptcy protection."[91] Therefore, the Bankruptcy Court was correct to conclude that only the $1,626 that the accountant applied to the preparation of the Greens' personal returns was nondischargeable, because that amount was not an operating expense of the limited liability companies and thus "injur[ed] SEPH by diverting $1,626 that it should have received as a distribution."[92] In its Appeal, SEPH argues that $1,626 cannot be the correct nondischargeable amount, because the parties stipulated that, in fact, $5,800 had been transferred to the accountant for Green's personal benefit.

The parties are at odds regarding the standard of review that should be applied to this portion of the appeal. SEPH argues that Judge Dodd's conclusion that all but $1,626 of the payments to the accountant was not a "distribution" that would fall within the charging order was a "legal conclusion subject to *de novo* review."[93] On the other hand, Green suggests that the ruling on this issue was based on Judge Dodd's determinations regarding the credibility of Green's testimony.[94] Such credibility determinations are subject to review for clear error, Green says, citing a Fifth Circuit case for the proposition that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[95]

---

[91] Rec. Doc. No. 1, p. 21.
[92] Rec. Doc. No. 1, p. 24 ("[T]he sole remaining issue for trial is whether a payment made, admittedly at the direction of Lawrence, by Green & Sons, LLC, in the amount of $5,800, to a CPA firm for preparation of taxes that benefited Lawrence personally constituted actual fraud and/or was done with willful and malicious intent to cause injury to Plaintiff sufficient to warrant excepting a certain portion of Plaintiff's debt from discharge").
[93] Rec. Doc. No. 13, p. 11.
[94] Rec. Doc. No. 15, p. 15.
[95] *In re Luhr Bros.,* 157 F.3d 333, 338 (5th Cir. 1998).
50342

This Court agrees with Green that the Bankruptcy Court's ruling turned on Judge Dodd's assessment of Green's testimony. In its *Memorandum Opinion*, the Bankruptcy Court stated that "the debtor credibly testified" regarding his goal in effecting the transfer to the accountant, which was "solely to complete his tax returns and comply with the requirements for a bankruptcy filing."[96] Specifically, the Bankruptcy Court cited Green's testimony that "he was not thinking of SEPH and its interests when he transferred the funds to his accountant. He used the money to pay for tax returns for several family businesses, his wife and himself, so that the couple could maintain their chapter 7 case."[97] The Bankruptcy Court held that this testimony demonstrated that the bulk of the payment to the accountant was nondischargeable in light of the Supreme Court's interpretation of § 523(a)(6) in *Kawaauhau v. Geiger*,[98] wherein, the Bankruptcy Court wrote, it held that the statute does not encompass "debts arising from negligent or reckless conduct or even intentional conduct when the resulting injury is unintended."[99] For its part, SEPH again attempts to argue that Green's deposition testimony, wherein he expressed clear enmity toward SEPH, suffices to prove his intent. The Bankruptcy Court concluded otherwise, and this Court will not disturb the Bankruptcy Court's findings without a showing of clear error, which is not in evidence here.

### E. Appeal from the Bankruptcy Court's July 6, 2018 *Judgment*

This Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*.[100] The Bankruptcy Court's *Judgment* in this case was the

---

[96] Rec. Doc. No. 1, p. 25.
[97] Rec. Doc. No. 1, p. 23.
[98] 523 U.S. 57, 64 (1998).
[99] Rec. Doc. No. 1, p. 23.
[100] *In re Galaz*, 765 F.3d 426, 429 (5th Cir. 2014)
50342

result of its rulings on the motion for partial summary judgment and the trial and the resulting *Memorandum Opinion* on the one claim that survived summary judgment. This Court, *supra*, reviewed those rulings and concluded that they would be affirmed. Therefore, the Court likewise affirms the *Judgment* that memorialized those previous rulings of the Bankruptcy Court.

## III. CONCLUSION

Having considered Plaintiff's arguments and applied the appropriate standard of review, this Court affirms the following actions of the Bankruptcy Court:

1) The Order denying SEPH's *Motion to Stay or in the Alternative to Extend Scheduling Order Deadlines*;[101]

2) The *Order Granting Partial Summary Judgment*;[102]

3) The *Memorandum Opinion*[103] and Order denying SEPH's *Motion to Alter, Amend, or Vacate Partial Summary Judgment*;[104]

4) The *Memorandum Opinion* regarding claims not disposed of in the Partial Summary Judgment Order;[105] and

5) the *Judgment* entered by the bankruptcy court on July 6, 2018.[106]

SEPH's Appeal is hereby dismissed, and this matter shall be terminated by the Clerk of Court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 29, 2019.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[101] Rec. Doc. No. 1, p. 9 (Ex. A).
[102] *Id.* at p. 10 (Ex. B).
[103] *Id.* at p. 12 (Ex. C).
[104] Rec. Doc. No. 1, p. 15 (Ex. D).
[105] *Id.* at p. 16 (Ex. E).
[106] *Id.* at p. 27 (Ex. F).
50342